
# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–14–1043

| | |
|---|---|
| BLAINE JACKSON | **Opinion Delivered** January 6, 2016 |
| APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. PR 2010-547-6] |
| LINDA JEAN STRATTON, PERSONAL REPRESENTATIVE of the ESTATE OF DONALD RAY STRATTON, SR. | HONORABLE DOUGLAS SCHRANTZ, JUDGE |
| APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Attorney Blaine Jackson brings this one-brief pro se appeal from the orders of the Benton County Circuit Court imposing sanctions on him for contempt and for violation of Arkansas Rule of Civil Procedure 11. We affirm.

The events in this case arise from Jackson's representation of Donald Stratton, Jr., in connection with lengthy and contentious litigation over the estate of Stratton's father, which led to an earlier appeal to this court. *See Stratton v. Stratton*, 2014 Ark. App. 292 (*Stratton I*). A complete recitation of the underlying facts can be found in *Stratton I*. In brief, the contempt citation against Jackson arose when he pursued the appeal that led to *Stratton I* despite the circuit court's entry of an order staying all appeals until after entry of an order of final distribution. After Jackson perfected the appeal in *Stratton I*, Linda Stratton, the personal representative of the estate, filed a motion to show cause. The circuit court held a hearing on the contempt petition and found both Jackson and Stratton Jr. in contempt for pursuing an

appeal in violation of the court's stay. The court found that Jackson's disregard of its stay was "blatant." The court took the issue of punishment under advisement until after the appeal in *Stratton I* was determined.

As we indicated in *Stratton I*, Jackson's client, Stratton Jr., executed a disclaimer of his interest in his father's estate. Immediately following entry of the order admitting the will to probate, Jackson repeatedly filed various motions and pleadings that asserted, *inter alia*, that Stratton Jr. was a pretermitted child and that the personal representative obtained the disclaimer by fraud and misrepresentation. Jackson also filed a will contest that was later withdrawn.

After the circuit court ruled against him on several occasions, Jackson changed approaches and filed a claim against the estate on behalf of Jamie Self, the decedent's granddaughter. In this pleading, Jackson asserted that Stratton Jr. was a pretermitted child and that the decedent's entire estate passed to Stratton Jr.; that the disclaimer was invalid; that if the disclaimer was valid, the estate passed to Stratton Jr. by intestate succession; and, in the alternative, that if the disclaimer was valid, the estate would nevertheless pass by intestate succession to Self as a child of Stratton Jr.[1] In addition, Jackson again asserted that the personal representative obtained the disclaimer by fraud and misrepresentation. Jackson asserted a similar claim in a companion civil case.

The personal representative moved to strike Self's claim by arguing that the claim was

---

[1]This claim was based on Arkansas Code Annotated section 28-2-206 (Repl. 2012).

untimely under Arkansas Code Annotated sections 28-9-209(d), 28-40-113, and 28-50-101.[2]

Later, the personal representative filed a motion for Rule 11 sanctions pursuant against Jackson. The motion asserted that Jackson's filing of the claim on Self's behalf was not well grounded in law or fact and was filed to harass the personal representative and to delay the administration of the estate.

In May 2014, we dismissed the appeal in *Stratton I* because the circuit court had stayed the appeal until after a final order of distribution was entered. We also held that we could not consider Jackson's arguments that the stay was improper because there was no notice of appeal filed from the order granting the stay.

After the denial of a petition for rehearing and the issuance of our mandate in *Stratton I*, the circuit court held a hearing on various issues pending before the court in both the probate case and the companion civil case. In connection with the contempt citation, the personal representative submitted an affidavit stating that she had incurred $9,139 in expenses, fees, and costs associated with defending the appeal in *Stratton I*. She did not seek a specific sanction for Jackson's violation of Rule 11.

---

[2]The personal representative argued that Self's claim was untimely under section 28-9-209(d) because Self was admittedly born out of wedlock and Stratton Jr. did not establish his paternity within 180 days of the decedent's death. Pursuant to section 28-40-113(b), if a will contest is on any ground other than that another will has been discovered, and if the will contestant has been given proper notice, the contestant's "grounds for objection must be filed at or prior to the time of the hearing on the petition for probate." Section 28-50-101, the non-claim statute, generally bars claims unless verified to the personal representative or filed with the court within six months after the date of the first publication of notice to creditors. Here, Jackson waited more than two years after the admission of the will to probate before filing the claim on Self's behalf.

The court first considered the contempt matter and found that the estate incurred expenses and costs of $9,139 in defending the appeal. The court found that Jackson had adequate notice of the hearing on the motion to show cause. The court noted that Jackson had claimed that he had not received proper notice on more than one occasion. Sanctions were imposed against Jackson and Stratton Jr. jointly and severally for the estate's expenses. The court also concluded that Jackson had violated Rule 11 when he filed the claim on behalf of Jamie Self in both the probate case and the companion case. As a sanction, Jackson was ordered to pay $1,000 to the court in the probate case and $250 in the companion case. This appeal timely followed.

Jackson's first point is that the circuit court erred in holding him in contempt.[3] He further argues that he was attempting to properly and zealously represent Stratton Jr. in the first appeal. We disagree.

In order to establish contempt, there must be willful disobedience of a valid order of a court. *See Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). Contempt is a matter between the court and the litigant and not between the two opposing litigants. *Id*. Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id*.

---

[3] Jackson's brief contains numerous deficiencies, including deficiencies in the abstract, addendum, and argument, in violation of several provisions of Rule 4–2 of the Rules of the Arkansas Supreme Court and Court of Appeals. Because we have accepted this brief "as is" on Jackson's motion to file a nonconforming brief, we cannot return this brief to Jackson to allow him to correct these errors. Jackson is bound by the brief "as is," including its deficiencies.



Contempt is divided into criminal contempt and civil contempt. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). In its order finding Jackson in contempt, the circuit court did not specify whether the contempt was civil or criminal. We must decide the nature of the proceedings because it determines our standard of review. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Id.* Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* The line between civil and criminal contempt may blur at times. *Id.* In *Baggett v. State*, 15 Ark. App. 113, 116, 690 S.W.2d 362, 364 (1985), we gave a concise description of the two concepts, noting that criminal contempt punishes while civil contempt coerces. *See also Applegate v. Applegate*, 101 Ark. App. 289, 275 S.W.3d 682 (2008). Therefore, the focus is on the character of relief sought. *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988).

Here, the sanction was a judgment in favor of the personal representative where Jackson was ordered to pay, jointly and severally with Stratton Jr., the sum of $9,139. Although this sanction has elements that are both punitive and compensatory, there was no way for Jackson to avoid the sanction by complying with the court's orders. Therefore, we conclude that the court found Jackson in criminal contempt. Our standard of review for criminal contempt is whether the decision is supported by substantial evidence, viewing the record in the light most favorable to the circuit court's decision. *Kilman v. Kennard*, 2011 Ark. App. 454, 384 S.W.3d 647.

The circuit court had before it substantial evidence to support the finding of contempt in the form of Jackson's admission that he was aware of the court's order staying the appeal but nevertheless perfected his appeal in the belief that he was acting in his clients' best interest. Where a person is held in contempt for failure or refusal to abide by a judge's order, the reviewing court will not look behind the order to determine whether it is valid. *Stilley v. Univ. of Ark. at Ft. Smith*, 374 Ark. 248, 287 S.W.3d 544 (2008); *Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000). The fact that an order may be erroneous does not excuse disobedience on the part of those who are bound by its terms until the order is reversed. *Stilley, supra.* The court also based its finding on a credibility determination by noting that Jackson had claimed not to have had proper notice on more than one occasion.

Jackson further argues that the contempt hearing was held less than twenty days after the motion was filed, in violation of Ark. R. Civ. P 6(c). However, we have rejected a very similar argument. *See Brock v. Eubanks*, 102 Ark. App. 165, 288 S.W.3d 272 (2008). In *Brock*, we pointed out that the statute dealing specifically with contempt, Ark. Code Ann. § 16-10-108 (Repl. 2010), sets no fixed time for a party's response to a charge of contempt, providing in subsection (c) only that the party charged must be notified and given a "reasonable time" to make a defense. *Brock, supra.* Moreover, Jackson does not argue that he was prejudiced by the shortened time frame. We will not reverse a finding of contempt absent a showing of prejudice. *Kilman, supra.*

Jackson next argues that the circuit court erred in imposing Rule 11 sanctions. We begin by noting that the circuit court actually found three violations of Rule 11. As we

mentioned earlier, Jackson filed essentially the same claim on behalf of Jamie Self in both the probate case and the companion civil case. The circuit court found that Jackson had violated Rule 11 by not withdrawing the claim he filed on Self's behalf because he knew, or should have known, that it was not a viable claim because Self was an illegitimate child. As a sanction, Jackson was ordered to pay $1,000 to the court in the probate case. In the companion case, Jackson was ordered to pay $250 to the court.[4]

Although Jackson purports to appeal from the Rule 11 sanctions in both cases, he did not file the record from the companion civil case. Instead, he included the order imposing the sanctions with the record of the probate case. The timely filing of the record on appeal is a jurisdictional requirement to perfecting an appeal. *Conlee v. Conlee*, 366 Ark. 342, 235 S.W.3d 515 (2006). Rule 5 of the Arkansas Rules of Appellate Procedure–Civil provides that the record on appeal shall be filed with our clerk and docketed within ninety days from the filing of the first notice of appeal, unless the time is extended by order of the circuit court. The ninety days contemplated by Rule 5 begins to run from the filing of the first notice of appeal. *Conlee*, *supra*. If a party fails to file the record within the ninety-day period provided under Rule 5(a), the party's appeal is dismissed. *Id*. Because Jackson failed to file the record in the companion civil case at all, we cannot consider his appeal from the sanctions imposed in that case.

---

[4]Stratton Jr. was ordered to pay $100 as a sanction in the companion case. The third Rule 11 sanction was also in the companion case. Jackson and Stratton Jr. were found to have violated Rule 11 by filing a notice of appeal from an obviously nonfinal order. Judgment was entered against Jackson and Stratton Jr. jointly and severally in favor of the personal representative in the sum of $1,979.

SLIP OPINION

Further, when a circuit court bases its decision on more than one independent ground, as the circuit court did here when it found three bases for concluding that Jackson had violated Rule 11, and the appellant challenges fewer than all those grounds on appeal, we will affirm without addressing any of the grounds. *Duke v. Shinpaugh*, 375 Ark. 358, 290 S.W.3d 591 (2009); *Coleman v. Regions Bank*, 364 Ark. 59, 216 S.W.3d 569 (2005); *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002); *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989). Here, the circuit court ruled that Jackson should have known that Jamie Self's claim was not viable because Self was an illegitimate child, because of the lapse of time, and because of the disclaimer executed by Stratton Jr. Jackson does not challenge the ruling that the claim was untimely. Because Jackson did not challenge all the grounds that the circuit court relied on in making its decision, we affirm without addressing the merits. Accordingly, we summarily affirm the circuit court's imposition of Rule 11 sanctions.

Affirmed.

GLADWIN, C.J., and GLOVER, J., agree.

*Blaine A. Jackson*, pro se appellant.